### Henry E. HUGHES, Petitioner,

### v.

### N. Mitchell MEADE, Judge, Fayette Circuit Court, Respondent.

Court of Appeals of Kentucky.

April 30, 1970.

James E. Keller, Lexington, for petitioner.

George E. Barker, Lexington, for respondent.

CLAY, Commissioner.

This is an original proceeding for a writ of prohibition against the Honorable N.

Mitchell Meade, Judge of the Fayette Circuit Court. Petitioner, an attorney, seeks to restrain the respondent from enforcing a contempt ruling entered against him because of his refusal to answer a question as a witness in a criminal trial. Petitioner was not a party to, nor did he represent anyone as an attorney in such proceeding.

The proceeding in which he was called as a witness was the trial of one Williams on a criminal charge involving the theft of an IBM typewriter. Petitioner had participated in the return of an IBM typewriter to the Lexington Police Department. His testimony with respect thereto, and so much thereof as is pertinent to the question presented, is as follows:

Q. "Would you tell the jury the circumstances and how you happened to deliver that typewriter?

A. "Well, a certain party called me and employed me because of, first of all, my relationship with the Lexington Police Department, which is very good, and I do entirely criminal law and know all of the policemen and members of the Police Department, and asked me if I could get some property returned without getting me involved in it.

Q. "Without getting who involved— you or him?

A. "Without getting me involved. * * *.

"So I called Morris Carter, who was then either assistant chief or a major. I know Morris well, and I asked him, I said, 'Morris, are you all interested in getting some stolen property back?' And he said 'Yes we are,' and he said, 'What is it?' I said 'I don't know, I have no idea,' and I said, 'Morris, I don't want to get involved in this thing, I don't want to be called as a witness, all I want to do is get this taken care of.' He said, 'All right, how is it going to be delivered?' And I said, 'Well, I'm watching the cartoons.' It was Saturday morning, and I said, 'Somebody is going to leave

it on my front porch,' and the shades were down and I heard a car come up and left, and I called Morris back and I said 'Morris, it's out here,' and he said, 'Okay I'll send somebody out to get it,' * * *.

(Officer Sparks arrived and a taped box was opened disclosing a typewriter.)

Q. "Can you identify it as to brand or model?

A. "It was an IBM typewriter, I don't know what model it was.

Q. "And then did Officer Sparks take possession of the box and the typewriter at that time?

A. "He took it and took it down town, I guess.

* * * * * *

Q. "And do I understand you correctly that during the period of time from when it arrived and up until Officer Sparks got there you had not seen this typewriter?

A. "Never seen it.

* * * * * *

Q. "Was this delivered on your property?

A. "Yes, it was.

Q. "You didn't want to see who it was?

A. "No, that's right.

Q. "You say that the certain party called you and employed you to do what you have just described and said you did, is that correct?

A. "Yes, sir.

Q. "Was this the extent of your employment?

A. "Yes, sir.

Q. "Have you been paid for that service?

A. "Yes, sir.

Q. "And I'll ask you now if you will tell us the name of the individual who employed you?

A. "I refuse to answer."

Petitioner was found in contempt of court for failure to identify the person who had called him. It is his contention that this information was a privileged communication under KRS 421.210(4), and the trial court improperly sought to compel him to disclose it. That subsection of the statute provides (insofar as pertinent):

"No attorney shall testify concerning a *communication* made to him, *in his professional character*, by his client, or his advice thereon without the client's consent; * * *." (Emphasis added)

This statutory provision generally conforms to the common law policy and principle of attorney-client privilege (developed since 1800) and it is generally recognized in the United States. See 8 Wigmore, Evidence § 2291 (McNaughton rev. 1961). This same author thus phrases the principle (page 554):

"(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."

A more comprehensive statement of the principle appears in United States v. United Shoe Machinery Corp. (D.C.Mass.1950), 89 F.Supp. 357, 358.

Wigmore states the object (page 566):

" * * * is to protect the perfect working of a special relation, wherever confidence is a necessary feature of that perfect working."

Some question has been raised as to whether an attorney-client relationship generally existed between the unknown person and the petitioner, but we believe the question presented is narrower in compass. See Prichard v. United States (C.A.6 1950), 181 F.2d 326, affirmed 339 U.S. 974, 70 S. Ct. 1029, 94 L.Ed. 1380. The proper approach to the problem is thus summed up in 16 A.L.R.3d 1050:

"It has been said that the reason underlying the attorney-client privilege is to encourage a client to disclose fully the facts and circumstances of his case to his attorney without fear that he or his attorney will be compelled to testify as to the communications had between them. Since the privilege results in the exclusion of evidence it runs counter to the widely held view that the fullest disclosure of the facts will best lead to the truth and ultimately to the triumph of justice. In reconciling these conflicting principles the courts have pointed out that since the policy of full disclosure is the more fundamental one the privilege is not to be viewed as absolute and is to be strictly limited to the purpose for which it exists."

(This is a very recent, comprehensive and excellent note on the applicability of the attorney-client privilege as it relates to the client's identity.)

The limitations of the rule are thus stated in 8 Wigmore, Evidence § 2291 (McNaughton rev. 1961) (page 554):

"Nevertheless, the privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete. * * *. It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle."

In line with those limitations, it is generally held that the identity of a client is not a privileged communication. United States v. Pape (C.A.2 1944), 144 F.2d 778,

782, cert den 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602 (1944); Behrens v. Hironimus (C.A.4 1948), 170 F.2d 627, 628; Colton v. United States (C.A.2 1962), 306 F.2d 633, 637; NLRB v. Harvey (C.A.4 1965), 349 F.2d 900, 16 A.L.R.3d 1035. In the often cited case of People v. Warden of County Jail, 150 Misc. 714, 270 N.Y.S. 362, 367 (1934), it was said:

> "The name or identity of the client was not the confidence which the privilege was designed to protect; the statements of the client for the purpose of seeking advice from his counsel were the disclosures which were to be kept secret."

This general rule, however, like most others, is subject to exception under unusual circumstances. In the following cases the identity of the client was held within the scope of the privilege. Ex parte McDonough, 170 Cal. 230, 149 P. 566, L.R.A.1916C, 593 (1915); Baird v. Koerner (C.A.9 1960), 279 F.2d 623; In Re Kaplan, 8 N.Y.2d 214, 203 N.Y.S.2d 836, 168 N.E.2d 660 (1960); and Tillotson v. Boughner (C.A.7 1965), 350 F.2d 663.

In the above cases the attorney-client relationship was clearly established, and the acts performed were closely interrelated with the rendering of professional service. In McDonough the attorney had been employed by an undisclosed client to defend a criminal charge against another person. In Baird the attorney had turned over to the government a sum of money which some taxpayers, in consultation with the attorney, had determined was due and owing as unpaid income taxes. The court observed that the only reason for obtaining information concerning the clients' identities was for the purpose of prosecution. Tillotson involved facts similar to those in Baird. In Kaplan the attorney had been retained to pass on to a public investigating body certain information concerning certain apparent wrongdoing by municipal authorities. It was here observed that since the information had been given, the client's name deserved and needed protection.

As noted in the foregoing cases, the transactions about which information had been given constituted in essence the performance of a legal service. On the other hand, if the act in question fairly cannot be said to fall within the scope of professional employment, the privilege cannot be invoked. As said in 97 C.J.S. Witnesses § 280, page 793:

> "Neither is there any privilege as to communications with reference to a matter in which the attorney acts, not in his professional capacity, but merely as an agent or attorney in fact, or in which the attorney acts merely as a depositary or as a trustee, particularly where he has instructions to deliver the instrument deposited to a third person, or abstracter of titles."

This brings us to the recent case of NLRB v. Harvey (C.A.4 1965), 349 F.2d 900, 16 A.L.R.3d 1035. There a detective had been employed by an attorney to take under surveillance a union organizer. In a matter before the National Labor Relations Board the attorney declined to name the client who had employed him to hire the detective. On an appeal from an order discharging a show-cause rule against the lawyer, the court remanded the case for the district judge to determine the nature and character of the lawyer's employment with respect to the transaction involved.

The affidavit of the lawyer established clearly that the undisclosed person had been his regular and continuing client, for whom various legal services had been furnished and performed. In a well-considered opinion the court discussed the various considerations that properly should be taken into account in determining whether or not the identity of a client may be the subject of the privilege. It was concluded that under special circumstances the privilege involving the client's identity may be invoked, but since the "character" of the lawyer's retainer with respect to this transaction was not unequivocally established, the question could be decided only after further

proof. In concluding the opinion the court set forth the criteria to determine this issue in the following language:

"If the District Judge finds from the nature and character of Harvey's employment that Harvey was retained by his client to render a legal opinion, perform a legal service or afford representation in legal proceedings and as an incident to this employment he hired the detective, the privilege should be recognized. On the contrary, if Harvey was engaged to obtain information for his client without being retained to furnish a legal opinion, services or representation, in connection with the request for information, the privilege does not exist and he must disclose the name of his client and comply with the subpoena."

There are two Kentucky cases which have a bearing on this question. Standard Fire Ins. Co. v. Smithhart, 183 Ky. 679, 211 S.W. 441 (1919), involved a suit on a fire insurance policy. The trial court had ruled that an attorney who at one time represented the plaintiff could not testify to communications made to him which implicated her in the burning of the house. It was unquestioned that the attorney was representing the plaintiff in his professional capacity at the time the communications were made.

The opinion recognizes that communications with respect to the *past* commission of a crime were privileged but that communications concerning contemplated *future* crimes or frauds were not privileged. It was held that communications to her attorney by the plaintiff in furtherance of her contemplated fraud on the insurance company were not privileged as they were not made to the attorney in his professional capacity because he could not receive them in such capacity. To the same effect was Fidelity-Phenix Fire Ins. Co. of New York v. Hamilton, Ky., 340 S. W.2d 218 (1960).

Returning to the facts of this case, it is the opinion of the majority of the court that whether or not a bona fide attorney-client relationship existed between the petitioner and the undisclosed person, the principal transaction involved, i. e., the delivery of stolen property to the police department, was not an act in the professional capacity of petitioner nor was it the rendition of a legal service. He was acting as an agent or conduit for the delivery of property which was completely unrelated to legal representation. While repose of confidence in an attorney is something much to be desired, to use him as a shield to conceal transactions involving stolen property is beyond the scope of his professional duty and beyond the scope of the privilege.

Some question is raised with respect to the nature of the contempt rule, whether civil or criminal, and the punishment imposed. Though the trial court's order recited that this was *criminal* contempt, at the hearing on this petition it was apparently conceded to be *civil* contempt. We believe it falls within the latter category under Levisa Stone Corporation v. Hays, Ky., 429 S.W.2d 413 (1968), and Baird v. Koerner (C.A.9 1960), 279 F.2d 623, and the contempt order was justified.

The petition for a writ of prohibition is denied.

EDWARD P. HILL, C. J., and OSBORNE, PALMORE and REED, JJ., concur.

NEIKIRK, J., not sitting.