297 So.2d 871 (1974)
Charles Dean ANDERSON, Petitioner,
v.
STATE of Florida, Respondent.
No. 74-252.
District Court of Appeal of Florida, Second District.
July 19, 1974.
N. David Korones, Clearwater, for petitioner.
Robert L. Shevin, Atty. Gen., Tallahassee, and Richard C. Booth, Asst. Atty. Gen., Tampa, for respondent.
GRIMES, Judge.
The petitioner was charged with receiving and concealing stolen property, to wit, a dictaphone and a calculator. He retained N. David Korones to represent him as his attorney in defense of this charge. Thereafter, the dictaphone and calculator were delivered to Mr. Korones' receptionist. Mr. Korones turned these items over to the police. The state then subpoenaed Mr. Korones and his receptionist to testify at the trial. The trial judge denied petitioner's motion to quash the subpoenas. Petitioner now files a petition for common law certiorari asserting that the court has departed from the essential requirements of law by overriding petitioner's attorney-client privilege.
The order specifies that Mr. Korones and his receptionist[1] will be required to testify "when, how and from whom they received the allegedly stolen property." Petitioner contends that this will result in a breach of the attorney-client privilege which has been long recognized in Florida. Seaboard Air Line Ry. v. Parker, 1913, 65 Fla. 543, 62 So. 589.
The policy behind the attorney-client privilege is to promote freedom of consultation with legal advisers through removing the apprehension of compelled disclosure *872 by such advisers. 8 Wigmore, Evidence § 2291 (McNaughton rev. 1961). The wording of the order under consideration suggests that the judge's ruling was predicated upon a determination that the public interest outweighed the petitioner's attorney-client privilege so as to require the disclosure. While the courts of our nation have often said that there are circumstances in which the public interest can override the protection of an attorney-client privilege, an analysis of many of these cases suggests that what the courts are really saying is that since the privilege results in the exclusion of evidence, it should not be viewed as absolute and must be strictly limited to the purpose for which it exists. As Wigmore puts it:
"... [T]he privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete... . It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 Wigmore, Evidence § 2291 (McNaughton rev. 1961).
This state's argument in opposition to the petition is consistent with this interpretation. The state forcefully argues that the delivery of the stolen items does not constitute a communication protected by the attorney-client privilege.
There is no doubt that, by definition, the privilege relates to communications between the client and his attorney. Keir v. State, 1943, 152 Fla. 389, 11 So.2d 886. However, the authorities recognize that the communication does not have to be verbal in nature in order to be privileged. Thus, McCormick on Evidence at § 89 states:
"The modern justification of the privilege, namely, that of encouraging full disclosure by the client for the furtherance of the administration of justice, arguably gives no foundation for extending the privilege beyond communications of the client or his agents to the lawyer or his clerk... .
"... However, the matter is not free from difficulty. A confidential communication may be made by acts as well as by words, as if the client rolled up his sleeve to show the lawyer a hidden scar, or opened the drawer of his desk to show a revolver there. Certainly the fact that the client made the communication and its contents as a communication would be privileged against disclosure by either client or attorney... ."
Yet, not all acts of the client observed by his attorney are held to be privileged. Wigmore says:
"... Looking back at the reason of the privilege, it is seen to secure the client's freedom of mind in committing his affairs to the attorney's knowledge. It is designed to influence him when he may be hesitating between the positive action of disclosure and the inaction of secrecy. There is, therefore, by hypothesis, always some voluntary act of disclosure  some removal of that secrecy which would otherwise have existed as between the client and the attorney.
"On the one hand, then, those data which would have come to the attorney's notice in any event, by mere observation, without any action on the client's part  such as the color of his hat or the pattern of his shoe  and those data which become known by such acts as the client would ordinarily have done in any event, without any purpose of communicating them to the attorney as his adviser  such as the style of his handwriting or the amount of money in the roll of bills from which he pays his retainer  these are not any part of the communications of the client... ." 8 Wigmore, Evidence § 2306 (McNaughton rev. 1961).
*873 In support of its position, the state cites Ross v. State, Fla.App. 1st, 1967, 202 So.2d 582, in which the court denied the defendant's objection to his wife's testimony that he had given her a sweater at a time shortly after it was stolen. The court held that her testimony about the physical acts of her husband did not constitute a confidential communication between husband and wife which was privileged under common law principles. Other than a possible difference between the husband-wife and the attorney-client relationships, this case can only be distinguished if one concludes that even though the defendant probably gave the sweater to his wife because she was his wife, in so doing he was not relying on the protection afforded by the privilege in the same way that petitioner did when he delivered the stolen items to his attorney. In any event, it is our opinion that petitioner's delivery of the merchandise to Korones' receptionist constituted a communication as contemplated by the attorney-client privilege.
There are two cases from outside of Florida which serve to illustrate the conflict of legal theories which can occur when a client causes physical evidence pertinent to the commission of a crime to come into the hands of his attorney. In Hughes v. Meade, Ky. 1970, 453 S.W.2d 538, a certain party called an attorney on the telephone and employed him to return some property to the police because of his good relationship with the members of the police department. The attorney contacted one of his friends on the police force and arranged for the return of an IBM typewriter. The attorney was later called as a witness for the state at a trial charging the defendant with the theft of the typewriter. The attorney was not representing the defendant in the trial. He refused to disclose the name of the party who had employed him and was held in contempt. The court held that the service for which the attorney had been employed was not professional in nature and was not a legal service. The court said that he was acting merely as an agent or conduit for the delivery of property which was unrelated to legal representation.
In State v. Olwell, 1964, 64 Wash.2d 828, 394 P.2d 681, an attorney was representing a person under investigation as a suspect in a knife murder. The attorney was subpoenaed to appear at a coroner's inquest and to bring with him all knives in his possession and under his control relating to his client. Upon his refusal to do so, the attorney was held in contempt. On appeal, the Washington Supreme Court first observed that it was reasonable to infer from the record that the attorney had, in fact, obtained a knife as a result of information received from his client during their conference. The court held that the attorney-client privilege was applicable to the knife held by the attorney, but that the privilege did not warrant the attorney withholding it after being properly requested to produce it. The court said that the attorney, as an officer of the court, should, on his own motion, turn the knife over to the prosecution. However, the court went on to say:
"We think the attorney-client privilege should and can be preserved even though the attorney surrenders the evidence he has in his possession. The prosecution, upon receipt of such evidence from an attorney, where charge against the attorney's client is contemplated (presently or in the future), should be well aware of the existence of the attorney-client privilege. Therefore, the state, when attempting to introduce such evidence at the trial, should take extreme precautions to make certain that the source of the evidence is not disclosed in the presence of the jury and prejudicial error in not committed. By thus allowing the prosecution to recover such evidence, the public interest is served, and by refusing the prosecution an opportunity to disclose the source of the evidence, the client's privilege is preserved and a balance is reached between these conflicting interests... ."
*874 Ordinarily, the attorney-client privilege does not extend to withholding the identity of a client. 8 Wigmore, Evidence § 2313 (McNaughton rev. 1961); see Silverman v. Turner, Fla.App.3rd, 1966, 188 So.2d 354. Therefore, it could be argued that making Mr. Korones tell who gave him the stolen items amounts to nothing more than requiring him to identify his client.
Even if the validity of this analogy were accepted, we believe the facts of this case would bring it within the exception to the general rule. Thus, in 16 A.L.R.3d 1047, at page 1050, the annotator, in pointing out the circumstances under which the identification of one's client may still be privileged, states:
"While the disclosure of the name or identity of a client is generally held not, in and of itself, a matter within the attorney-client privilege, it has become so in situations in which so much has been divulged with regard to the legal services rendered or the advice sought, that to reveal the client's name would be to disclose the whole relationship and confidential communications. Thus, in a number of civil actions courts have declared a client's name privileged where the subject matter of the attorney-client relationship has already been revealed, and in criminal proceedings, particularly where the attorney is not the accused, courts have recognized that a client's name may be privileged if information already obtained by the tribunal, combined with the client's identity, might expose him to criminal prosecution for acts subsequent to, and because of, which he had sought the advice of his attorney. Similarly, in tax proceedings, some courts have declared a taxpayer-client's name privileged when so much has been revealed concerning the legal services rendered that the disclosure of the client's identity exposes him to possible investigation and sanction by government agencies."
Our sister court faced the question of whether the privilege may be invoked to conceal the identity of a client in Sepler v. State, Fla.App.3rd, 1966, 191 So.2d 588. There, an attorney was subpoenaed to give the names of two other attorneys who had sought his counsel concerning a communication they had received from a client about an abortion thought to have been performed on a missing woman. By a two to one decision, the court upheld the attorney's refusal to testify on grounds of privilege because the revealing of the attorneys' names would be calculated to lead to possible identification and prosecution of the unknown client based on his disclosures to these attorneys.
In Ex parte McDonough, 1915, 170 Cal. 230, 149 P. 566, the court held that an attorney who had been employed by certain clients to represent them in matters connected with the investigation of election frauds and who had appeared to defend three other individuals who were indicted for such frauds and put up a cash bail for one of the indicted persons could not be compelled to tell the grand jury the names of the clients who employed him to represent the three indicted men and who furnished the cash for the bail. While recognizing that an attorney is ordinarily not priviledged from disclosing his client's identity, the court concluded that the application of the general rule in this case would force the attorney to divulge a confidential communication tending to show an acknowledgment of guilt by the clients of the offenses against which the attorney had been employed to defend them.
Another example of an exception to the general rule of requiring an attorney to identify his client is found in Baird v. Koerner, CA 9th, 1960, 279 F.2d 623. In that case, a tax attorney was consulted by certain parties whose accountant had advised them that their prior tax returns were incorrect and that the taxes were understated. No investigation of the clients was then being made by the government. The *875 tax attorney delivered to the government the amount of the taxes determined to be owing without disclosing the identity of the taxpayers. The attorney was later held in civil contempt because of his refusal to disclose the identity of his clients. In reversing the order of contempt, the court of appeals said:
"The instant case discloses none of the reasons which public policy might dictate should cause the `balancing' of equities in favor of compelling disclosure. The client has filed no suit against the government and has not voluntarily subjected himself to the jurisdiction of a court, nor sought its aid. The attorney was employed by the clients he seeks to protect, even though this contact came through an agent. The employment has no reference to future criminal or fraudulent transactions involving the clients. The attorney himself has not relied upon a privilege, real or imagined, to protect his own skirts in the defense of a criminal charge filed against him. We find no other fact or peculiar circumstance, which, in our opinion, outweighs the desirability of the rule of privilege."
In the instant case, if Mr. Korones is required to divulge the source of the dictaphone and calculator, the petitioner is very likely to be convicted because of an action he took in connection with a matter for which he retained Mr. Korones in the first place. While we are acutely conscious of the interest of the public in effective criminal prosecution and while it appears that Mr. Korones' testimony would conclusively show that the petitioner once had the stolen property in his possession, we believe that to require Mr. Korones to testify under these circumstances would be to do violence to the fundamental concept of the attorney-client privilege. In the final analysis, the petitioner would not have delivered the items to Mr. Korones any more than he would have talked to Mr. Korones about them except for the fact that Mr. Korones was representing him as his attorney. Therefore, we hold that neither Mr. Korones nor his receptionist can be required to divulge the source of the stolen items, and in order for the privilege to be meaningfully preserved, the state cannot introduce evidence that they received the items from Mr. Korones' office.
We wish to point out in this opinion that we believe that Mr. Korones acted properly under the circumstances which confronted him. The items in question were delivered to his receptionist without solicitation. He did what the court in State v. Olwell, supra, said the attorney should have done  turned the items over to the police.
We also wish to make clear that our holding is limited by reason of the fact that the information sought from the subpoenaed witnesses related only to a crime which had already been committed. The attorney-client privilege cannot prevent the disclosure of communications made in contemplation of a crime or the perpetration of a fraud. Kneale v. Williams, 1947, 158 Fla. 811, 30 So.2d 284; Leithauser v. Harrison, Fla.App.2d, 1964, 168 So.2d 95.
Certiorari is granted, and the order compelling the testimony of Mr. Korones and his receptionist is hereby quashed.
McNULTY, A.C.J., and BOARDMAN, J., concur.
NOTES
[1] The state makes no contention that the receptionist would not be under the umbrella of the privilege pertaining to Mr. Korones. See 8 Wigmore, Evidence § 2301 (McNaughton rev. 1961).