# STATE OF FLORIDA v. GEORGE

## Case No. TE82-4367/TE82-4368

County Court, Orange County

July 8, 1982

### APPEARANCES OF COUNSEL

**Joseph Cocchiarella,** Assistant State Attorney, for plaintiff.

**Alan Todd** for defendant.

### OPINION OF THE COURT

JAMES C. HAUSER, County Judge.

#### *FACTS OF CASE*

The Defendant was arrested on April 19, 1982, for the offense of fleeing or attempting to elude a police officer and driving under the influence of alcohol. The Defendant refused to take a breathalyzer test

until he discussed it with his attorney. The Defendant called his attorney, who came to the station house. The Defendant and his attorney were allowed to confer in private. The attorney observed the physical condition of the Defendant, to wit: the degree of sobriety of the Defendant. There were a number of other witnesses who can be called by the State in this case who also observed the Defendant's sobriety at the station house.

## ISSUES

I. After the Defendant has retained an attorney, and the attorney visits the Defendant, may that attorney be called as a witness for the State to testify to any physical observations made by the attorney of the defendant?

## DISCUSSION OF FACTS

Florida's attorney-client privilege is not absolute, it pertains only to confidential communications between attorney and client. *Anderson v. State*, 297 So.2d 871 (Fla. 2d DCA 1974). In the case at bar, the defense counsel asserts the privilege should include physical observations made by him of his client's sobriety.

This exact issue has not been ruled upon by any Florida courts. In *Anderson v. State*, supra, a defendant took stolen poperty to his attorney; the attorney then turned over the property to the police. The State attempted to subpoena the attorney to testify from whom he got the property. The 2d DCA ruled that the delivery of the property was "quasi-communication" and based on the attorney-client privilege, the attorney would not be required to testify. The Court stated at p.875:

> In the instant case, if Mr. Korones is required to divulge the source of the dictaphone and calculator, the petitioner is very likely to be convicted because of an action he took in connection with a matter for which he retained Mr. Korones in the first place . . . *In the final analysis, the petitioner would not have delivered the items to Mr. Korones any more than he would have talked to Mr. Korones about them except for the fact that Mr. Korones was representing him as his attorney.* (emphasis added)

See also *State v. Sandini*, 395 So.2d 1178 (Fla 4th DCA, 1981); *State v. Schroeder*, 112 So.2d 257 (Fla., 1959). If the Defendant, in the case at bar, knew that when his attorney came to visit him at the station house, the attorney's observations could be used against him, he would have asked the attorney not to visit him.

In understanding how far the attorney-client privilege extends, it is

248

helpful to compare it to the husband-wife privilege. In the latter instance, physical observation of the Defendant's conduct in *committing* a crime by a spouse are clearly admissible. *Porter v. State*, 160 So.2d 104 (Fla., 1963); *Kerlin v. State*, 352 So.2d 45 (Fla., 1977). Usually when the crime is committed, the spouse is the only witness to testify to the criminal actions that occurred. To the contrary, when an attorney witnesses the physical appearance or actions considered to be non-confidential communications, it is usually *after* the criminal acts have occurred. Usually, there are other possible witnesses who could testify concerning the physical appearance of the defendant.

Case law in other jurisdictions reveals that the attorney-client privilege is not strictly limited to communications, but extends to protect observations made as a consequence of protected communications.

In *People v. Meridith*, 631 P.2d 46 (Cal., 1981), the Supreme Court of California had competing policy considerations to decide between attorney-client privilege and the State's interest. In that case, the Defendant's attorney's investigator found crucial evidence in a garbage can, after communicating with his client. The investigator removed the evidence, but later turned it over to the police. Without the investigator's testimony, there would be no way for the State to prove where the evidence had been found.

The Court addresses the narrow issue of whether the Defendant's investigator's observations, which were the product of privileged communications, would be admissible evidence. The Court recognized that a balance must be struck between two competing interests.

1. The chilling affect on an attorney-client relationship if the attorney's observations could be used against his client; especially since the failure to observe could inhibit the attorney's investigation of his client's case.

vs.

2. The fact that the attorney-client privilege should not render evidence immune from discovery merely because the defendant's attorney seized it first.

In balancing the two competing interests, the Court held that the observations of an attorney, based on privileged communications, are inadmissible unless the Defendant has somehow precluded the State from making the same observations.

In the case at bar, the State has numerous witnesses besides Mr. Todd who could testify regarding the Defendant's sobriety. Under the *Meridith*, supra, Mr. Todd's testimony should be excluded.

The State distinguishes *Anderson v. State*, 297 So.2d 871 (Fla., 1974) and *Meridith v. California*, supra, from the case at bar, since in both cases the attorney discovered the evidence sought to be introduced by communicating with the defendant. In the case at bar, the *observations* of the defendant's sobriety at no time were the result of privileged communications.

There are a number of courts which have ruled that the attorney's observations to his client's physical appearance is admissible; *United States v. Kendrick*, 331 F.2d 110 (4th Cir., 1963), an attorney was required to testify concerning his client's mental health; accord *Clanton v. U.S.*, 488 F.2d 1069 (5th Cir., 1970), which even stated the attorney could be required to testify concerning defendant's sobriety. Yet, in neither of these cases was the defendant's sobriety an essential element of the criminal offense of which he was charged.[1]

In fact, Judge Sobeloff's special concurrence in *Kendrick* is especially instructive since he pointed out that the attorney's observations cannot be separated from his role to investigate the case and stated at p. 115:

> The lawyer's observations were inextricably intertwined with communications which passed between him and his client. It can not be said that the testimony was confined to nonconfidential matters. That being so, the well established privilege which protects against disclosure was violated.

The Court agrees with Judge Sobeloff's special concurrence in the case at bar.

In addition to the attorney-client privilege, to require Mr. Todd, as Defendant's attorney, to testify against his client would fatally impinge on the Defendant's right to a fair and impartial trial (V Amendment) and on Mr. Todd's effectiveness in representing the Defendant (VI Amendment). It was under this constitutional theory that convinced the Washington Supreme Court not to require the defendant's counsel to testify concerning the location of certain murder victims. *Washington v. Sullivan*, 373 P.2d 474 (Wash., 1962). The Court stated at p. 478:

> . . . Mr. Conroy's testimony became repetitious and not necessary to the State's case in the interest of justice and the protection of the public. This tilts the balance in the defendant's favor. Defense counsel's presence as an unwilling witness for the State rendered his services less effective and invaded the accused's right to unhampered representation at the trial.

---

[1] But see *State v. Fitzgerald*, 34 A 429 (Vt., 1896), requiring an attorney to testify regarding Defendant's sobriety, after he had been employed as counsel.

Accord *State v. Livingston*, 285 Ne.2d 75 (C.A. Ohio, 1972).

Finally, the State claims under *Roche v. State*, — Fla. Supp.2d —, decided by Judge Brown, in his appellate capacity, the Defendant had no right to have his attorney present at the station. Regardless of whether the Defendant did or did not have the right to have his attorney present, the police permitted Defendant's attorney to see his client at the station house. Once admitted into the station house, all the protection of the attorney-client privilege, the V and VI Amendments come into play.

In summary, this Court rules that Mr. Todd, as Defendant's attorney cannot be made to testify against his client in this case[2] because:

1. His observations of the Defendant's sobriety were inextricably intertwined with his duty as an attorney to investigate his client's case.

2. The cumulative testimony offered by Mr. Todd would impinge upon his client's V Amendment right to a fair trial and his VI Amendment right to effectiveness of counsel.

It is therefore:

ORDERED AND ADJUDGED that the State's subpoena to require Mr. Todd to testify is hereby quashed. Further, the requirement that Mr. Todd be required to withdraw from this case as counsel (since he could testify on his client's behalf) is also denied based on the above reasoning.

---

[2] This decision does not preclude an attorney from being called as a witness under different circumstances. For example, if the attorney had gone drinking with the defendant before the offense of D.U.I. took place, he certainly could have been called as a witness to testify to the defendant's degree of sobriety before he drove.