**In re WITNESS BEFORE GRAND JURY NO. 82–5.**

**FGJ No. 82–5.**

United States District Court,
S.D. Florida,
Miami Division.

Feb. 18, 1983.

Robert Lipman, Asst. U.S. Atty., Miami, Fla., for the Government.

John O'Donnell, Fort Lauderdale, Fla., for witness.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO COMPEL GRAND JURY WITNESS TO TESTIFY

SPELLMAN, District Judge.

THIS CAUSE is before the Court on the Government's Motion To Compel a Grand Jury Witness To Testify. Having reviewed the record and being otherwise duly advised, it is hereby,

ORDERED AND ADJUDGED that the Motion To Compel is GRANTED.

### BACKGROUND

The government wants to compel the testimony of a lawyer, who will remain anonymous, before grand jury 82–5 investigating a cocaine importation conspiracy. The lawyer-witness refused to answer questions concerning the identity of the person from whom he received sums of money, which sums he delivered to another attorney. The lawyer-witness claims that the attorney-client privilege protects such information. According to the witness, this is so because these particular facts would constitute the last link in the chain leading to his client's indictment and conviction.

The facts establish that mule # 1 was in debt, he was told that he could work off the debt by bringing drugs to the United States. Government's Exhibit A, grand jury testimony at 14, 15, 16, (G.J.T.). Moreover, mule # 1 was told by the man who sent him with the drugs that if he was caught a lawyer would be provided. G.J.T. at 7. Both mule # 1 and # 2 were arrested in Miami for importing cocaine into the United States.

Sometime after the arrest, the lawyer-witness was called by someone and asked to represent both the two mules and the caller. The lawyer-witness declined to represent both but continued to represent caller as a possible co-defendant, and secured other counsel for the mules. In addition, the lawyer-witness claims he gave advice to the source concerning his predicament.

The lawyer-witness then functioned as a sort of go-between the caller and the law firm secured by him for the mules. That is he functioned as a currency courier. He delivered currency in sealed envelopes to the law firm representing the mules; he delivered currency to the bondsman for the premium, and he delivered in installments, $100,000.00 in currency to the bondsman, when mule # 2 jumped a bond in like amount. Government's Exhibit D, grand jury testimony at 17–33.

The issue for decision is whether under the particular facts of this case an attorney-client privilege attaches. After careful consideration of the record this Court concludes that no attorney-client privilege exist in this particular situation. In arriving at this determination, the Court must examine the more specific question of whether under the circumstances presented here the identity of the lawyer-witness' client is privileged. As will be explained more fully below, this Court finds that the lawyer-witness' client's identity is not privileged.

## THE LAW

The question of whether the attorney client privilege attaches as to the identity of one's client is governed by federal common law. *United States v. Woodall,* 438 F.2d 1317, 1327 (en banc) (5th Cir.1970) *cert. denied,* 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971); F.R.Crim.P. 26. The necessary elements to establish the attorney-client privilege are:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones,* 517 F.2d 666, 670 (5th Cir.1975).

█ The difficulty is in applying the above to individual situations. In general, the identity of a client is not privileged, *Frank v. Tomlinson,* 351 F.2d 384 (5th Cir. 1965) *cert. denied,* 382 U.S. 1028, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966), nor are matters involving the receipt of fees usually privileged. However, exceptions have been found.

One such exception has been articulated in the *Jones* case *supra.* In *Jones* the prosecutors issued subpoenas directing, what amounted to, a generous portion of the local criminal bar to bring all records etc. for the accounts of specifically named clients who were involved in large quantity marijuana offenses. The attorneys moved to quash these subpoenas on the grounds that their testimony as to certain questions would disclose communications made to them in confidence by unidentified individuals who the attorneys represented. The prosecutors claimed this information about the identities of unknown clients and information about legal fees and bonding arrangements in behalf of known clients was not privileged.

When called as witnesses before the grand jury, each attorney refused to answer who paid the attorney's fees for known clients. The attorneys based this refusal on a claimed privilege of an unidentified client.

Applying the relative-probative test the Court found the names of the unidentified persons need not be disclosed because the sought after testimony would have been directly relevant to corroborating or supplementing already existing incriminating information about certain persons suspected of income tax offenses. *Id.* at 674.

The *Jones* court did comment that although in its opinion the facts and circumstances of that case supported the finding of a privilege other cases must turn on their own merits. *Id.* at 668. It is clear to this Court as it was to the court in *Jones* that the exception to the general rule that the identity of a client is not privileged is very limited and rarely available and by its very nature must be considered on a case by case basis.

In this regard, the Court finds the present case more analogous to *In re Grand Jury Proceedings, (Pavlick),* 680 F.2d 1026 (en banc) (5th Cir.1982 Unit A.) than *Jones, supra.* In *Pavlick* several persons were arrested on a shrimper loaded with marijuana and subsequently tried and convicted in the district court. Thereafter, each defendant was granted immunity and brought before a grand jury and asked who provided the funds for their bond and representation. All the witnesses knew was that if they were caught they would be "taken care of." *Id.* 1027.

The grand jury called the attorney, Pavlick, and he refused to identify the smugglers' benefactor invoking the attorney client privilege. The Pavlick court distinguished the case from *Jones* on several grounds: First, in *Jones* there was a rather broad attempt to canvas the entire criminal bar for information detrimental to their

clients. Second, each defendant had paid attorney's fees greater than his reported gross income. Third, the identity sought was not the last link in any chain of inculpatory events, and fourth, and the factor most significant to the court was the presence and redemption of the outstanding promise—if arrested the smugglers would be taken care of. *Id.* at 1027–28.

The Fifth Circuit in holding that a privilege did not exist in *Pavlick* adopted the holding in *United States v. Hodge & Zweig,* 548 F.2d 1347 (9th Cir.1977). The Fifth Circuit in adopting the holding in *Hodge & Zweig* stated that

> where the government makes a prima facie showing that an agreement to furnish legal assistance was part of a conspiracy, the crime or fraud exception applies to deny a privilege to the identity of him who foots the bill—and this even though he be a client of the attorney and the attorney unaware of the improper arrangement.

*Pavlick,* 680 F.2d at 1029.

This Court applying the above law to this situation first examines the requisite elements to establish an attorney-client privilege. In this regard, the court notes that the burden of establishing both the existence of an attorney-client relationship and the confidential nature of the communication is on the party invoking the privilege. In *United States v. Ponder,* 475 F.2d 37, 39 (5th Cir.1973) the court noted that "to come within the scope of the privilege an attorney must show that the communication was made to him confidentially in his professional capacity, for the purpose of securing legal advice or assistance."

As applied here, the lawyer-witness has failed to establish to this Court's satisfaction that the communication between him and the unidentified client concerning the payment of legal fees and bond for the two mules was for the purpose of obtaining legal advice for the unidentified client. The person asserting the privilege must show that "the communication relates to a fact of which the attorney was informed by his client . . . . for the purpose of

securing primarily either an opinion on law or legal services or assistance in some legal proceeding."

Simply because a person asks a lawyer to be the delivery boy to pay a drug smuggler's bond and legal fees does not bring that person's identity under the narrow exception announced in *Jones.*

This Court finds the case at hand clearly distinguishable from *Jones* and strikingly similar to *Pavlick.* The case is distinguishable from *Jones* in that here there was no attempt to canvass a large portion of the criminal bar for evidence against their clients; there was no prima facie showing in *Jones* as here that the crime of fraud exception applied, and finally in *Jones* there was no evidence that the lawyer-witness acted as a delivery boy of large sums of cash as there is here.

The case is similar to *Pavlick.* First, there is no direct evidence to establish the identity of the person who hired mule # 1 to transport the drugs or to identify the person who caused the lawyer-witness to hire lawyers and a bondsman for the mules. Moreover, there is no evidence that the same individual who enlisted the mules to transport the drugs is even the same person who requested the lawyer-witness to hire the lawyers and bondsman for the mules. Therefore, this Court finds the evidence here no more establishes the last link in any chain than the evidence in *Pavlick* did.

This Court like the Ninth Circuit in *Hodge & Zweig* and the Fifth in *Pavlick* will not "permit the promise of legal services to be made a fringe benefit for use in recruiting criminal conspirators. To draw the cloak of privilege across such an arrangement would be to shield the performance of an undertaking on which, in part the conspiracy was based." 680 F.2d at 1028. The government having made a prima facie showing that an agreement to furnish legal assistance was part of a conspiracy has triggered the crime or fraud exception to deny a privilege as to the unidentified client's identity.