MARVIN, Judge.
Defendant, who is charged with a 1984 murder, seeks supervisory review and reversal of the trial court’s ruling which denied defendant’s motion to suppress any evidence relating to a pistol, presumably the murder weapon, which was obtained by defendant’s 1984 attorney from the attic of defendant’s home in 1984 and was surrendered by that attorney to police upon their request in 1986.
Defendant raised the issue in what he styled as an “In Limine Motion.” In lieu of a hearing, the facts as alleged by defendant were stipulated. The facts were that an indigent defender attorney, who was then representing defendant, and who, immediately after interviewing defendant in the jail in 1984, went into the attic of defendant’s home where he obtained the pistol that he later surrendered to the police. This court earlier ruled on defendant’s motions to suppress other evidence. See State v. Taylor, 468 So.2d 617 (La. App.2d Cir.1985), in which the defendant was represented by another attorney.
Defendant argues that he should not be prejudiced by his 1984 attorney’s improper action, but instead should be afforded the protection of the attorney-client confidentiality privilege and the benefit of the State being without the pistol and any testimony concerning it having been in defendant’s attic. The State’s response, here and below, is that the State intends to introduce only the chain of custody of the pistol and does not intend to inquire into the content of any conversation between the defendant and his lawyer or lawyers.
The circumstances are pregnant with issues which concern the lawyer as a witness and the ethical duties of a lawyer to protect a client’s confidences and secrets and to surrender tangible evidence which he knows or should know is connected with the crime and which has come into the possession of the lawyer. These broader issues are discussed in much material stemming from, and including, the Code of Professional Responsibility, LRS Title 37 and in ABA Defense and Prosecutor Standards and will not be considered here.[1] We shall address only the narrow issue to afford guidance to the trial courts and the bar.
Analytically the lawyer-client privilege[2] is not identical with a defendant's constitutional privilege against self incrimination, but is conceptually similar because both privileges are based on privacy and confidentiality. In Re January 1976 Grand Jury, 534 F.2d 719 (7th Cir.1976). There a lawyer admitted to an FBI agent that he had received “something” from his clients who were suspected of bank robbery, but *212 asserted the attorney-client privilege and refused to disclose whether he had received either or both money and weapons. The lawyer was then ordered to respond to a Grand Jury subpoena to produce money delivered to him by the clients on the date of the robbery and to answer a question concerning his receipt of any money from the clients on that date.
The lawyer refused to respond as ordered and was held in contempt. The lawyer argued that compelling him to respond as ordered would violate his client’s constitutional privilege against self-incrimination. The court answered:
The recognition that an attorney need not produce stolen monies in response to a subpoena would provide a mechanism by which a member of a learned profession could become the privileged reposi-v tory of the fruits of a violent crime. There is no reason for thinking that the policy of respecting a private enclave of individual citizens reaches that far. 534 F.2d at p. 727.
The lawyer also argued, as defendant here argues, that the attorney-client privilege protects against producing the money because the transferring of the money from the client to the lawyer was a “substantive communication.” The court answered:
... [W]e are not persuaded that the transfer of such monies represents a communication for which the clients could legitimately anticipate confidentiality. 534 F.2d at p. 728.
Ethical Consideration 7-27 states that “[b]ecause it interferes with the proper administration of justice, a lawyer should not suppress evidence that he or his client has a legal obligation to reveal or produce.” Our holding that [the lawyer], under the circumstances of this case, cannot avoid compliance with the subpoena because of a claim of Fifth Amendment protection leads us to conclude that he is under a legal obligation to reveal or produce the monies which we have assumed arguendo that he has. Failure to comply with the subpoena and the subsequent court order to produce and testify effects the practical suppression of the sought after evidence.
We think that the Ryder conclusion is persuasive authority that the appellant cannot assert the privilege. We hold that [the lawyer’s] refusal to testify or to produce does not bear a reasonable relation to the privilege and duty to refuse to divulge a client’s confidential communications. ibid., p. 729.
The lawyer’s contempt adjudication was affirmed.
On the stipulated facts and pronouncement of the State that it intends to inquire only into the chain of custody of the pistol (who obtained what, where, and when), and not into any privileged matters or lawyer-client communication, we find no error and deny defendant’s application for a writ of review.

. See and compare In Re Ryder, 263 F.Supp. 360 (E.D.Va.1967), aff'd per curiam, 381 F.2d 713 (4th Cir. 1967); State v. Olwell, 64 Wash.2d 828, 394 P.2d 681, (1964); Anderson v. State, 297 So.2d 871 (Fla.App.2d 1974); People v. Lee, 3 Cal.App.3d 514, 83 Cal.Rptr. 715 (1970); In Re Grand Jury Proceedings, 517 F.2d 666 (5th Cir. 1975); United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); Hughes v. Meade, 453 S.W.2d 538 (Ky. 1970); Clutchette v. Rushen, 770 F.2d 1469 (9th Cir.1985).

. LRS 15:475 (adopted by Act 2 of 1928) reads:
No legal adviser is permitted, whether during or after the termination of his employment as such, unless with his client’s express consent, to disclose any communication made to him as such legal adviser by or on behalf of his client, or any advice given by him to his client, or any information that he may have gotten by reason of his being such legal adviser. Our emphasis.
It has been concluded that our statutory privilege and cases interpreting it parallel the common law privilege and cases. See Comment, 18 La.L.R. 162, 172 (1957).