607 So.2d 494 (1992)
Ruth DEAN, and Barry Krischer, Petitioners,
v.
Roger DEAN, Respondent.
No. 92-0669.
District Court of Appeal of Florida, Fourth District.
November 4, 1992.
Rehearing Denied December 2, 1992.
*495 Joel M. Weissman of Joel M. Weissman, P.A., West Palm Beach, and Barry E. Krischer of Salnick & Krischer, West Palm Beach, for petitioners.
Joseph D. Farish of Farish, Farish, and Romani, of West Palm Beach, for respondent.
FARMER, Judge.
The issue raised here is whether the attorney-client privilege can be used to prevent the disclosure of the identity of a person who had previously consulted an attorney regarding the return of stolen property belonging to one of the parties in a civil case. As we explain along the way, under the circumstances of this case the privilege bars such disclosure.
The facts are unusual, to say the least. During the pendency of the Deans' dissolution of marriage case, the husband's place of business was allegedly burgled, resulting in the loss of two duffel bags containing various personal items belonging to husband's daughter, and from $35,000 to $40,000 in cash. Sometime after the theft, an unidentified person telephoned Krischer at his office. He related the conversation as follows:
I received a telephone call from an individual who knew that I was an attorney; knew I was an attorney that was involved in the Baltes[1] matter and the individual asked me for advice with regard to returning property. I advised this person on the telephone that the experience that I have had in the State Attorney's office was that the best avenue was to turn the property over to an attorney and let the attorney bring it to the State Attorney's office or to the law enforcement.
At another point, Krischer added:
Obviously I have been through this before and I knew all the questions to ask this person and I got all the responses back which indicates to me this person knew I was a lawyer, was asking for legal advice and did not want their identity revealed.
Krischer met twice and had one telephone conversation with this person. Nearly six weeks after the second meeting, the two duffel bags containing only the daughter's personal property were delivered to Krischer's office by someone who told his receptionist that he "would know what they are." No cash was included with the returned items. Krischer then delivered the bags to the police, telling them that they "may have some connection with" husband.
In a twist of irony, these events came to light through Krischer's former secretary, who had also by then become a client of husband's lawyer. Soon after, husband's lawyer served Krischer with a subpoena for a deposition, seeking the identity of Krischer's contact. Krischer asserted the privilege at the deposition. Husband then moved to compel the testimony. After a hearing, the trial court granted the motion, saying in part:
The purpose of the attorney-client privilege is to encourage the free and full disclosure by clients of information to attorneys so that adequate legal representation can be supplied. It is not however the purpose of the attorney-client privilege to act as a vehicle by which individuals can use an attorney to insulate themselves from disclosure relative to activities which do not involve legal representation. In this case, Mr. Krischer did not appear in court or render any legal opinions; rather he merely advised the person to use an attorney as a conduit and then acted in that capacity to *496 deliver stolen goods to the police. He did nothing and gave no opinions that could not have been done or given by any member of the public.
There are other factors which weigh against the existence of an attorney-client relationship. Mr. Krischer testified that when he is hired by a new client it is his office procedure to create a three by five card with the name and address of the client; and to enter the name of the client in his computer system. None of these office procedures were followed with reference to this individual. Mr. Krischer also testified that he did not receive a fee for his services in this matter and that he does not expect to receive a fee in the future. While these facts certainly do not preclude the existence of an attorney-client relationship, I find them to be more consistent with Mr. Krischer having acted as a conduit than as an attorney in this matter.
The court concluded that there was no attorney-client relationship, and thus no privilege, and ordered Krischer to answer the questions as to the identity of his contact. Krischer and the wife in the dissolution proceedings have filed a petition for a common law writ of certiorari in which they seek to quash the decision and to uphold the privilege.[2]
The attorney-client privilege, though dating back to Elizabethan England, did not become developed in its present form until the nineteenth century. 8 Wigmore, Evidence, § 2290 (McNaughton rev. 1961) [Wigmore]. It rests on the theory that:
"[i]n order to promote freedom of consultation of legal advisers by clients, the apprehension of compelled disclosure by the legal advisers must be removed; hence the law must prohibit the disclosure except on the client's consent."
8 Wigmore at § 2291. One of the most eloquent formulations of the rationale for the privilege is thus:
Let the person be who he may, strong or weak, learned or unlearned, wise or foolish, a man of influence and invested with authority, or destitute of means and utterly helpless, his claims are equally to be laid before the judge with all the power of advocacy of which they are susceptible. To accomplish this object, the first indispensable requisite is, that the client shall so state to his legal advisers all the facts of his case. Very few clients can perceive wherein their strength lies. They must state the whole to the legal adviser, and leave him to form his own judgment. * * * [E]very man can ascertain the law by consulting a lawyer. But then the condition, upon which this power of ascertaining the law will rest is, that he may make the inquiry without incurring any danger. The communication must be privileged to the utmost extent, or it will not be made. Thus it will be one consequence of [the failure to accord the privilege], that the law will be in no way open to the community at large: to them it will be a sealed book * * *. [e.o.]
8 Wigmore at § 2291.
By the early eighteen hundreds, it was generally understood that the privilege did not depend on the existence of a formal proceeding or even an incipient controversy; rather it was accepted that all "communications made in seeking legal advice for any purpose were within the principle of the privilege." [e.o.] 8 Wigmore at § 2294. As Wigmore describes this development, the privilege was in time extended:
to include communications made, first during any other litigation; next, in contemplation of litigation; next, during a controversy but not yet looking to litigation; and, lastly, in any consultation for legal advice, wholly irrespective of litigation or even of controversy. [e.s.]
8 Wigmore at § 2290. In the words of the treatise, "[i]t has never since been doubted to be the law." Id.
In short, since its modern development, the privilege is founded wholly on subjective considerations: "[i]n order to promote freedom of consultation of legal advisers by clients, the apprehension of *497 compelled disclosure by the legal advisers must be removed * * *." 8 Wigmore at § 2291. Or, as it was stated more recently:
The [privilege] rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.
Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980). Hence, it logically follows that the privilege does not turn on the client actually hiring or engaging the attorney; it is enough if the client merely consulted the attorney about a legal question "with the view to employing [the attorney] professionally * * * although the attorney is not subsequently employed." Keir v. State, 152 Fla. 389, 394, 11 So.2d 886, 888 (1943).
What thus originally began as the product of prudential rules devised by common law judges in recognition of these ideas has now become codified by statute,[3] as well as disciplinary rules governing the conduct of lawyers.[4] Although FEC section 90.102 provides generally that the Florida Evidence Code supersedes the common law, it is also generally accepted that FEC section 90.502 represents a codification of pre-code law on the privilege. See Charles W. Ehrhardt, Florida Evidence, § 502.1 (1992 Ed.). Under FEC section 90.502(1)(b), a "client" is defined as any person "who consults a lawyer with the purpose of obtaining legal services or who is rendered legal services by a lawyer." We construe this language as continuing the common law focus on subjective considerations, viz., on the person seeking consultation with a lawyer, rather than on what the lawyer does.
It is thus necessary in this case that we focus not on what Krischer did but on what the client intended. Krischer testified that his contact sought legal advice from him  which is, he contends, paradigmatically a legal service  and hence became his client for the purpose of invoking the privilege. We agree.
Krischer's testimony makes plain the intent of his client.
Q. Is it true that the employment by you, by person "x" was predicated on the fact that you would keep person "x's" identity confidential?
A. Yes, that was the condition of the employment.
Q. Was your employment also a condition that you were person "x's" lawyer for all purposes?
A. Correct. The individual called  I can expedite this if I can state a couple of things, judge. I had obviously been through this previously in another case. I was well aware of what was needed to be established in order to protect this *498 client. I inquired of this client if that individual knew I was an attorney. That individual indicated that they did. I inquired if they were seeking legal advice. They indicated that they did. They discussed a legal problem with me. I gave them legal advice.
A condition precedent to this person discussing the legal problem with me was that I not divulge their identity. This person came to me with knowledge of my previous actions in a previous case and felt that I could be trusted, and on that condition precedent I listened to the problem, gave advise [sic] and rendered legal services.
The trial judge obviously accepted this testimony as truthful, but said that he must look beyond Krischer's "conclusion in this regard to the underlying facts." In effect, the court decided that the issue should turn on what the undisclosed person sought to accomplish with the legal advice obtained or on what Krischer did in consequence of the contact, citing Anderson v. State, 297 So.2d 871 (Fla. 2d DCA 1974), and Hughes v. Meade, 453 S.W.2d 538 (Ky. 1970).
Anderson is nearly, but not quite, the duplicate of this case. The petitioner there was charged with receiving and concealing stolen property. He retained Korones as his lawyer. Sometime after, the stolen property was delivered to Korones's office, and he turned it over to the police. He and his receptionist were thereupon subpoenaed by the state to testify at trial. After the trial judge refused to quash the subpoenas and compelled their testimony, he sought common law certiorari review of the order. The Second District granted the writ and quashed the order compelling the testimony.
Initially the court disposed of the notion that the return of the stolen property was not an act of communication, but was instead conduct unprotected by the privilege. The court squarely concluded that the return of the goods to the attorney's receptionist constituted communication contemplated by the privilege. Illustrating the point that there is a conflict in the theories when clients give physical evidence to attorneys, the court cited the decisions in Hughes v. Meade, 453 S.W.2d 538 (Ky. 1970), and State v. Olwell, 64 Wash.2d 828, 394 P.2d 681 (1964).
Judge (now Justice) Grimes explained Hughes as involving the use of a lawyer to return stolen property merely because the attorney was good friends with the police department, and not out of any desire to use the attorney for the rendition of legal services. In Olwell, the attorney was representing a person under investigation in a knife murder, and the attorney was subpoenaed by the state to appear at a coroner's inquest and bring with him all knives in his possession and relating to his client. The Washington court recognized that the privilege applied to testimony by the attorney as to the delivery of the knife, but the privilege did not prevent the knife itself being obtained from the attorney, so long as he was protected against disclosure as to how he acquired it.
At that point in Anderson, Judge Grimes observed that making Korones tell who gave him the stolen property amounted to little more than requiring an attorney to identify his client, a kind of disclosure that traditionally has not been protected by the privilege. He concluded, however, that there is a recognized exception to the client identity rule where the mere identity of the person may expose him to prosecution for criminal acts previously committed and for which the person has consulted the attorney. 297 So.2d at 874 (citing Sepler v. State, 191 So.2d 588 (Fla. 3d DCA 1966)).[5]
The Anderson court concluded that the exception governed and that the privilege barred the disclosure. The court noted that the person had consulted the attorney concerning an already completed criminal act and not a future one. Equally important, the court noted, was that the revelation of the identity might lead to the conviction of the person "because of an action he *499 took in connection with a matter for which he retained Korones in the first place." As Judge Grimes wrote:
In the final analysis, the petitioner would not have delivered the items to Mr. Korones any more than he would have talked to Mr. Korones about them except for the fact that Mr. Korones was representing him as his attorney. Therefore, we hold that neither Mr. Korones nor his receptionist can be required to divulge the source of the stolen items. * * *
297 So.2d at 875. We find this rationale directly applicable to this case.
And yet the trial court rejected Anderson in favor of Hughes. Apart from the fact of the court failing to follow Florida precedent in favor of another state's,[6] we conclude that the trial court has misinterpreted the privilege and the policies underlying it. It is indisputable that his contact, like the client in Anderson, consulted Krischer as an attorney. It is indisputable that the client sought legal advice about a specific matter. It is indisputable that the specific matter concerned a crime that had already been committed, not a planned or future act which might be a crime. And it is indisputable that the client insisted on confidence.
The focus, as we have seen from the common law development of the privilege and our own FEC section 90.502 definition of "client", is on the perspective of the person seeking out the lawyer, not on what the lawyer does after the consultation. As we have also seen, it has long been understood that the representation of a client in a court or legal proceeding is not indispensable for the invocation of the privilege. That Krischer's client sought him out for purely legal advice was enough. Legal advice, after all, is by itself a legal service. It is not necessary to the existence of the privilege that the lawyer render some additional service connected with the legal advice. Nor, as we know, is it even necessary that the lawyer appear in court or contemplate some pending or future legal proceeding.
And even if it were, the engagement of an attorney to effect the return of stolen property should certainly qualify. Surely there is a public purpose served by getting stolen property in the hands of the police authorities, even if the identity of the thief is not thereby revealed. Here the consultation resulted in exactly that. Krischer advised his client to turn over the property to the state attorney or the police. A lawyer's advice can be expected to result in the return of the property if the confidentiality of the consultation is insured.
At the same time, even if the person who returns the property is the thief, there is an equal privilege against self incrimination as well as a right to the effective assistance of counsel in defending against the criminal charge. That the criminal charge is not yet pending when the thief seeks to return previously stolen property after consultation with a lawyer is, as we have seen, irrelevant to the privilege. Thus, the mere fact that the consulted attorney acts as a "conduit" for the return of stolen property does not support the conclusion that the attorney has engaged in unprotected consultation with the person seeking the advice.[7] A legal service has been rendered just as surely as when the lawyer represents the accused thief in a criminal trial.
We need not be long detained by Krischer's failure to follow his usual procedures *500 for enrolling new clients, or that he did not expect to receive a fee for his services. These facts dwell on Krischer's actions, not on his client's purpose in contacting him. The failure of Krischer to memorialize his dealings with this client is not surprising in view of the obvious need for confidentiality in the matter, coupled with the limited amount of time and work necessary for Krischer to render his services to the client. Payment of a fee has never been indispensable to the relationship or the existence of the privilege. Charles W. Ehrhardt, Florida Evidence, § 502.2 (1992 Ed.).
We find that the trial court departed from the essential requirements of law in compelling disclosure of Krischer's client. We grant certiorari, quash the order requiring Krischer to reveal the identity of his client, and dismiss the subpoena.
CERTIORARI GRANTED; ORDER QUASHED; SUBPOENA DISMISSED.
GUNTHER, J., concurs.
GLICKSTEIN, C.J., dissents with opinion.
GLICKSTEIN, Chief Judge, dissenting.
The attorney in this case described his participation as a "conduit," who had been contacted by an unnamed party, to deliver stolen property to the police, and who subsequently delivered the property to the police. The attorney's participation was concluded when the stolen property was turned over to the police. The attorney was not paid a fee for his participation, and he did not expect to be paid a fee. Furthermore, standard office procedures regarding new clients were not followed in this matter.
In my view, the evidence in this case clearly shows that the unnamed party intended for the attorney to act merely as an agent or conduit for the delivery of property which was completely unrelated to legal representation. The evidence also shows that the attorney in this case was not acting in his professional capacity. For these reasons, I believe the attorney-client privilege does not apply to these circumstances. See Skorman v. Hovnanian of Florida, Inc., 382 So.2d 1376, 1378 (Fla. 4th DCA 1980); In re Witness Before Grand Jury No. 82-5, 558 F. Supp. 1089 (S.D.Fla. 1983); Hughes v. Meade, 453 S.W.2d 538 (Ky. 1970).
NOTES
[1] This refers to a widely publicized case in which a hit-and-run driver consulted Krischer for advice and, afterwards, Krischer asserted the attorney-client privilege when asked to disclose the name of the driver. The fact that the person consulting Krischer in this case referred to the widely publicized case when Krischer kept the identity of his contact confidential might reasonably be taken as evidencing the contact's strong interest in confidentiality.
[2] We agree with husband and the trial court that the wife has no standing to assert the privilege, so her presence in these proceedings can safely be discounted.
[3] See Section 90.502, Florida Statutes (1991), which provides in relevant part:

(2) A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.
All references to the Florida Evidence Code, sections 90.101-90.958, Florida Statutes (1991), are thus: "FEC section 90.502."
[4] See Rule Regulating The Florida Bar 4-1.6, which provides:

(a) A lawyer shall not reveal such information relating to representation of a client except as stated in paragraphs (b), (c), and (d) unless the client consents after disclosure to the client.
(b) A lawyer shall reveal such information to the extent the lawyer believes necessary:
(1) To prevent a client from committing a crime;
(2) To prevent a death or substantial bodily harm to another.
(c) A lawyer may reveal such information to the extent the lawyer believes necessary:
(1) To serve the client's interest unless it is information the client specifically requires not to be disclosed;
(2) To establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client;
(3) To establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved;
(4) To respond to allegations in any proceeding concerning the lawyer's representation of the client; or
(5) To comply with the Rules of Professional Conduct.
(d) When required by a tribunal to reveal such information, a lawyer may first exhaust all appellate remedies.
[5] This theory is sometimes described as the "last-link" exception, i.e. the identity is the last link in the chain of evidence needed to convict of the crime. See Corry v. Meggs, 498 So.2d 508 (Fla. 1st DCA 1986), rev. denied, 506 So.2d 1042 (Fla. 1987).
[6] In the absence of controlling precedent from its own district court, any trial court in Florida, irrespective of the district in which it sits, is required to follow the decision of any other district court of appeal in Florida. Weiman v. McHaffie, 448 So.2d 1127 (Fla. 1st DCA 1984), and State v. Hayes, 333 So.2d 51 (Fla. 4th DCA 1976).
[7] In contrast, the attorney in Hughes testified that he had been contacted only to deliver stolen property to the police. His contact reached out for him, not because he was a lawyer, but instead because he was a good friend of many members of the police force. Unlike Krischer here, he gave no legal advice. His services amounted to a phone call informing the police that, if they were interested in the return of stolen property, they could pick it up on the attorney's front porch. Not surprisingly, the court determined that this attorney rendered no legal service, and therefore could not invoke the attorney-client privilege. 453 S.W.2d at 542.