759 So.2d 690 (2000)
KEY LARGO RESTAURANT, INC., a Florida corporation, Petitioner,
v.
T.H. OLD TOWN ASSOCIATES, LTD., a Florida limited partnership; and T.H. Old Town, Inc., its general partner, Respondents.
No. 5D99-2025.
District Court of Appeal of Florida, Fifth District.
April 14, 2000.
Rehearing denied June 15, 2000.
*691 Robert W. Anthony of Fassett, Anthony, & Taylor, P.A., Orlando, for Petitioner.
R. Kimbark Lee of Lowndes, Drosdick, Doster, Kantor & Reed P.A., Orlando, for Respondents.
ANTOON, C.J.
Petitioner, Key Largo Restaurant, Inc., seeks certiorari review of an order disqualifying attorney Robert W. Anthony and his law firm from representing petitioner in a breach of contract action. We conclude that the trial court did not depart from the essential requirements of the law and therefore deny the writ.
Petitioner began operating the Key Largo Restaurant in 1985, leasing the premises from the owners of the property, respondents, T.H. Old Town Associates, Ltd. and T.H. Old Town, Inc. In 1993, petitioner sold its restaurant business to La Familia Latina Corporation (La Familia), assigning its interest in the lease to La Familia in return for a promissory note and security agreement on all the personal property and equipment located in the restaurant. In late 1993, La Familia defaulted on the note and on its lease. Recognizing their mutual interest in evicting La Familia from the premises, petitioner and respondents agreed that petitioner's attorney, Mr. Anthony, would represent both parties in the eviction proceeding. In an attempt to avoid a conflict of interest, Mr. Anthony asked petitioner and respondents to sign a waiver of conflict of interest. Petitioner and respondents signed the waiver.
Mr. Anthony's dual representation did not last long. Soon after Mr. Anthony filed the eviction action, La Familia filed a motion to remove Mr. Anthony, claiming that his representation of petitioner and respondents constituted a conflict of interest. La Familia then filed for bankruptcy. Thereafter, respondents notified Mr. Anthony that they would resume the services of their regular counsel, the law firm of Lowndes, Drosdick, Doster, Kantor & Reed, P.A. (Lowndes law firm). On the day the order substituting counsel was entered, Mr. Anthony instituted a lawsuit on behalf of petitioner against third parties who had guaranteed or assumed the debt of La Familia.
When the stay of the bankruptcy court was lifted, Mr. Anthony added La Familia as a defendant to the petitioner's lawsuit. Thereafter, settlement agreements were reached in the lawsuit and the bankruptcy case. The agreements provided for the payment of back rent and the execution of a Landlord's Agreement. Petitioner and respondents were parties to the Landlord's Agreement which provided that ho rent was due and that respondents agreed to subordinate their landlord's lien to petitioner's security interest. Throughout the negotiations leading to the execution of the Landlord's Agreement, Mr. Anthony represented petitioner and the Lowndes law firm represented respondents.
The instant controversy between petitioner and respondents arose when respondents notified petitioner that the new tenant of the restaurant premises, Jamil Abdo, was in default and owed back rent. Respondents demanded that petitioner pay the back rent in accordance with the terms of the parties' Landlord's Agreement. As a result of this development, Mr. Anthony filed suit against respondents on behalf of petitioner, alleging that respondents had breached the Landlord's Agreement by failing to give petitioner timely notice of the default sufficient to allow petitioner to exercise its right to become an assignee under the terms of the lease and take possession of the restaurant premises, thereby avoiding liability for past due rent. Petitioner filed for bankruptcy at the same time.
The bankruptcy case was eventually dismissed on petitioner's motion and the lawsuit against respondents was set for *692 trial in the circuit court. However, before trial, respondents filed a motion to disqualify Mr. Anthony from representing petitioner, asserting that a conflict of interest existed as a result of Mr. Anthony's prior representation of respondents in the action to evict La Familia. The motion described the eviction action as being a "matter substantially related to this case involving the same leased premises and the same restaurant." The motion also alleged that, as a result of his prior representation of respondents, Mr. Anthony "acquired information that, although not confidential, related to the representation which Mr. Anthony is likely to use or should use as a zealous advocate" for petitioner. While acknowledging that respondents had signed a waiver of conflict of interest in the La Familia eviction case, the motion asserted that the waiver form failed to adequately disclose the possibility that petitioner might sue respondents in the future. The motion also alleged that Mr. Anthony was likely to be a witness regarding the issue as to whether respondents had given petitioner notice of Mr. Abdo's default.
The trial court conducted an evidentiary hearing on the motion to disqualify Mr. Anthony. Respondents' vice-president testified that he had met with Mr. Anthony regarding the eviction of La Familia and that he thought the information he had given Mr. Anthony regarding that matter was confidential. He also testified that Mr. Anthony had never advised him that confidential communications could later be used by petitioner in a lawsuit against respondents. On cross-examination, respondents' vice-president admitted that he had met face to face with Mr. Anthony on only one occasion and that the meeting included petitioner's principal and was limited to a discussion of La Familia's conduct as it pertained to the lease. He also agreed that at the time the lease with Mr. Abdo was executed, Mr. Anthony was only representing petitioner; the Lowndes law firm represented the respondents. Respondents' general manager also testified. She stated that she objected to Mr. Anthony's representation of petitioner because "it is possible he could have learned something during that time period that would be relevant to this case in a prejudicial manner" to respondents. She added that this action involved the eviction of Mr. Abdo and therefore it was similar to the eviction action involving La Familia.
Mr. Anthony testified on behalf of the petitioner. He stated that he spoke with respondents' vice-president regarding the potential conflict with petitioner in the La Familia eviction proceeding, as petitioner was attempting to retake possession of the restaurant at the same time the rent was in default. He had only one telephone conversation with respondents' vice-president, during which the vice-president instructed him to file suit to evict La Familia. Mr. Anthony explained he had one meeting with respondents' vice-president along with La Familia's representative in effort to resolve the matter, and that within a few days of that meeting La Familia filed bankruptcy.
At the conclusion of the evidence, the trial court ruled that there was an attorney-client relationship between Mr. Anthony and respondents and that the current lawsuit was substantially related to the prior representation. The court also found that respondents had not consented to allow Mr. Anthony to represent petitioner against respondents in a substantially related matter, nor had respondents waived the right to object. The court concluded that Mr. Anthony's continued representation of petitioner would violate Rule 4-1.9 of the Rules Regulating the Florida Bar and would call into question the fair and efficient administration of justice. The court then disqualified Mr. Anthony from representing petitioner in the instant breach of contract action. Petitioner filed a timely petition for writ of certiorari seeking review of the trial court's order.
On review we must not grant the extraordinary writ of certiorari, disturbing *693 the trial court's order disqualifying Mr. Anthony, unless we can say that the order constitutes a departure from the essential requirements of law. See Martin County v. City of Stuart, 736 So.2d 1264 (Fla. 4th DCA 1999). The law does not require a long or complicated attorney-client relationship to fulfill the requirements for disqualification. See McPartland v. ISI Inv. Servs., Inc., 890 F.Supp. 1029, 1031 (M.D.Fla.1995). Instead, once an attorney-client relationship is shown, an irrefutable presumption arises that confidences were disclosed to the attorney, and the only remaining requirement is a showing that the current case involves the same subject matter or is substantially related to the matter in which the lawyer represented the moving party. See Russakoff v. State, Dept. of Ins., 724 So.2d 582 (Fla. 1st DCA 1998); see also Lee v. Florida Dept. of Ins. Treasurer, 586 So.2d 1185, 1190 (Fla. 1st DCA 1991). In that regard, Rule 4-1.9 of the Rules Regulating The Florida Bar provides:
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known.
Petitioner contends that the trial court's ruling granting disqualification was a departure from the essential requirements of law because, although both eviction actions involve issues relating to the accumulation of unpaid rent, review of the relevant facts reveals that the two cases are not substantially related. We disagree.
In determining whether Mr. Anthony's former representation of respondents was substantially related to the present litigation, the trial court considered that the initial case against La Familia ended when a settlement was reached, culminating in the execution of the Landlord's Agreement. This agreement obligated respondents to subordinate their landlord's lien to the security interest of petitioner under certain terms and conditions. This same Landlord's Agreement forms the basis for the instant litigation involving disputed claims for the same collateral. Also, at the core of Mr. Anthony's prior representation of respondents were the same leased premises and restaurant business that are central to the current litigation. Many of the witnesses and related issues are the same in both cases because both cases resulted from the financial difficulties encountered by the restaurant's tenants. In fact, La Familia's affirmative defense in the initial case, that respondents had fraudulently allowed unpaid back rent to accumulate to La Familia's prejudice, was filed while Mr. Anthony was respondents' attorney of record and a similar issue is raised in petitioner's lawsuit against respondents. The trial court also had for its consideration respondents' contention that any failure in providing written notice to petitioner of the rent default was not prejudicial because petitioner had actual notice of the default. Litigation of this issue will require presentation of evidence concerning the prior tenant's default, the historic understanding of the course of dealings between the parties, the intent of the parties with regard to the agreement, and the personal relationships of the individuals involved.
Petitioner also argues that, even if this court concludes that the cases are substantially related, respondents waived any objection to Mr. Anthony's representation of the petitioner in the instant case. In asserting this claim petitioner does not rely on the written waiver procured by Mr. Anthony in the original eviction suit against La Familia, perhaps recognizing that the waiver applied only to that proceeding. Instead, petitioner points to the *694 fact that even though respondents knew that Mr. Anthony was representing petitioner from the date the Landlord's Agreement was executed in April 1994 through the bankruptcy proceeding in May and June of 1998, respondents did not raise the issue of Mr. Anthony's alleged conflict of interest until January 1999. Petitioner contends that this passage of time constitutes waiver. See Concerned Parents of Jordan Park v. Housing Auth. of City of St. Petersburg, 934 F.Supp. 406 (M.D.Fla. 1996). However, petitioner has shown no prejudice as a result of the delay.
The record reveals that the instant proceeding was stayed when petitioner filed its bankruptcy petition. During the stay, petitioner was represented by other counsel specializing in bankruptcy, and the issues in the bankruptcy case were focused on the respondents' request for relief from the automatic stay. The petitioner was dismissed from bankruptcy on October 8, 1998. Three months later, on January 12, 1999, respondents notified the trial court that it had filed a motion to disqualify Mr. Anthony. Between the time the bankruptcy petition was filed and the date the motion to disqualify was filed, there was no activity in the state proceeding. We conclude that this filing was timely.
Finding that the trial court did not depart from the essential requirements of the law in granting the respondents' motion to disqualify Mr. Anthony, we deny petitioner's petition for writ of certiorari. Although other trial judges may have arrived at a different conclusion, the ruling entered in this case is supported by the evidence, well reasoned, and did not offend existing statutes or case law.
PETITION DENIED.
THOMPSON, J., concurs.
GRIFFIN, J., dissents, with opinion.
GRIFFIN, J., dissenting.
I respectfully dissent.
Petitioner began operating the Key Largo restaurant in 1985, but sold the restaurant to La Familia Latina Corporation ["La Familia"] in 1993, assigning its lease to La Familia and taking a promissory note for $525,000.00 secured by a security agreement on all the personal property and equipment in the restaurant. In late 1993, La Familia defaulted on the note and on its lease with respondents, T.H. Old Town Associates, Ltd. and T.H. Old Town, Inc. Because petitioner and respondents had a mutual interest in evicting La Familia, respondents agreed to have Anthony, petitioner's attorney, represent both in prosecuting the eviction. In order to avoid any potential conflict of interest, on December 17, 1993, Anthony wrote and requested respondents to sign a waiver. Respondents and petitioner both signed a waiver of any conflict of interest.
La Familia promptly filed for bankruptcy and respondents notified Anthony that they would be substituting their regular counsel, the Lowndes, Drosdick law firm, as their counsel. The eviction file was immediately transferred to the Lowndes firm and the order substituting counsel was entered on February 11, 1994.
Anthony instituted a lawsuit on behalf of petitioner against the third parties who had either guaranteed or assumed the debt of La Familia, and later added La Familia when the automatic stay in the bankruptcy case was lifted. On April 1, 1994, a settlement was reached in that lawsuit and in the bankruptcy which included a provision for payment of back rent and a contemplated Landlord's Agreement. During these settlement negotiations, Anthony represented petitioner and the Lowndes, Drosdick firm represented respondents. The Landlord's Agreement was executed on April 1, 1994 by representatives of petitioner and respondents. The agreement specified that there was no unpaid rent at the time the agreement was executed. In the agreement, respondents agreed to subordinate their landlord's lien to petitioner's security interest under certain terms.
*695 In April of 1998, respondents notified petitioner that the new third party who had taken over the restaurant was in default. Respondents demanded that pursuant to the terms of the Landlord's Agreement, petitioner pay rent for part of March and April, 1998 in the sum of $24,276.98, plus "Back Rent" of $80,750.00. In May, 1998, Anthony filed the current action on behalf of petitioner against respondents and others alleging that respondents had breached the Landlord's Agreement by failing to give petitioner timely notice of the default in the payment of rent sufficient to allow petitioner to exercise its right to become an assignee under the lease and take possession of the restaurant, thereby avoiding liability for the past due rent.
At the same time this lawsuit was filed, petitioner also filed for bankruptcy under Chapter 11. Petitioner filed an application in the bankruptcy proceeding to have Anthony represent it in the state lawsuit. Although counsel for respondents was present at the hearing on the motion, he made no objection to the application on conflict of interest grounds. Respondents then filed an amended answer and counterclaim alleging that petitioner was estopped from objecting to the repayment of rent arrearages which had been approved in the La Familia bankruptcy after notice to, and without objection from, petitioner. Respondents also alleged estoppel applied because petitioner had failed to advise respondents of the new tenant's default. In October, 1998, petitioner's bankruptcy case was dismissed on petitioner's motion. Thereafter, Anthony noticed the lawsuit for trial.
Finally, on January 11, 1999, for the first time respondents raise the claim that Anthony could not represent petitioner because he had previously represented respondents. Respondents filed a motion to disqualify counsel based on a conflict of interest arising from Anthony's prior representation of respondents "in a litigation matter substantially related to this case involving the same leased premises and the same restaurant." The motion also alleged that as a result of his representation of respondents, Anthony "acquired information that, although not confidential, related to the representation of respondent, which Mr. Anthony is likely to use or should use as a zealous advocate" for petitioner. Although acknowledging that a waiver of conflict of interest had been signed by its representative, respondents argued that the letter requesting the waiver failed to adequately disclose the possibility that petitioner might sue respondents in the future.
A hearing on the motion to disqualify was held on June 14, 1999. At the hearing, respondents' vice-president testified and admitted that the only time he had met face-to-face with Anthony was a meeting with petitioner's principal and that the eviction only involved La Familia's conduct under the lease agreement. He also agreed that at the time the new lease was executed, Anthony was only representing petitioner.
Petitioner's principal testified that she had suggested to respondents' vice-president that they act together to evict La Familia. She also stated that Anthony had been petitioner's attorney since 1984 or 1985, had handled all its legal work and that it would be a hardship if Anthony was disqualified, as he was handling the case on a contingent fee basis.
Anthony also testified. He stated that La Familia had filed for bankruptcy within eight days of the filing of the eviction complaint and that within a week thereafter, respondents' vice-president had advised that he was turning over representation to his usual lawyers. The last week in December, 1993, he turned the file over to the Lowndes, Drosdick firm and did no further work for respondents. Anthony testified that he only had one phone conversation with respondents' vice-president, who told him that it was okay to file the lawsuit on respondents' behalf. He then met once with respondents' vice-president *696 and La Familia's representative to discuss a possible settlement. Within two days of that meeting, the bankruptcy petition was filed by La Familia. Subsequently, he, on behalf of petitioner, and the Lowndes, Drosdick firm, on behalf of respondents, negotiated the Landlord's Agreement.
The lower court granted the motion to disqualify. The court held that the current lawsuit is substantially related to the prior representation and that respondents had not consented to Anthony's representation of petitioner against respondents, nor had respondents waived the right to object. The court concluded that Anthony's continued representation of petitioner would violate Rule 4-1.9 of the Rules Regulating the Florida Bar and would call into question the fair and efficient administration of justice warranting disqualification. In my view, each of these rulings was error.
First, the present action clearly is not substantially related to the prior representation. Rule 4-1.9 of the Rules Regulating The Florida Bar provides that:
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or a substantially related matter in which the person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or (b) use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known.
The comments to Rule 4-1.9 state that the underlying question to be answered when a conflict of interest claim is made is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question. The current litigation, however, involves only the enforcement of the Landlord's Agreement, which was not even in existence during the short period of time when Anthony represented both petitioner and respondents. When the agreement was negotiated and executed, Anthony represented petitioner and respondents had separate counsel.[1] The notion that Anthony is barred from now representing his client in litigation over the same agreement he negotiated for his client based on Rule 4-1.9 is amazing. Even if there were any substance to the conflict claim, it was plainly waived when, in the ensuing five years during which Anthony represented petitioner in all aspects of the ongoing dispute, the eventual multi-party settlement agreement and the subsequent litigation, no objection was raised until after the lawsuit was set for trial. The majority says prejudice is lacking but petitioner's loss of the lawyer most familiar with the case and the costs and delay inherent having to find new counsel are manifest and completely unjustified prejudice. If I were the trial judge, I would have seriously considered awarding sanctions against respondents' counsel for filing such a motion. To see this kind of litigation tactic succeed is beyond me. I would grant the writ.
NOTES
[1] It is also clear that no confidences could have been disclosed; there were only two communications. The first was simply the authorization to proceed and the second involved third parties.