785 So.2d 747 (2001)
Kathy L. METCALF, Petitioner,
v.
Alex Nolan METCALF, Respondent.
No. 5D01-262.
District Court of Appeal of Florida, Fifth District.
June 1, 2001.
*748 Tania R. Schmidt-Alpers, Central Florida Legal Services, Inc., Palatka, for Petitioner.
Charles A. Esposito, St. Augustine, for Respondent.
SAWAYA, J.
We have for review Kathy Metcalf's [the wife's] petition for certiorari. This case began when the wife filed a "Petition for Injunction for Protection Against Domestic Violence." Pursuant to section 741.30, Florida Statutes, the trial court entered a "Temporary Injunction for Protection Against Domestic Violence" against Alex Metcalf [the husband]. See also Fla. Fam. L.R.P. 12.610. Before a hearing could be held to determine whether the injunction should be made permanent, the wife filed a motion seeking disqualification of the husband's attorney, Charles Esposito. She argued that Esposito should be disqualified from representing the husband because a month prior to filing her petition, she had consulted with Esposito's partner, Davis Upchurch, at their law office of Upchurch & Esposito. The wife asserted that she divulged confidential information to Upchurch during the consultation and that when she consulted with him, she believed an attorney/client relationship existed. Although ultimately she did not hire Upchurch, she sought legal advice from him with the intention of hiring him to represent her in a divorce from her physically abusive husband.
The wife's affidavit, which accompanied her petition, stated in part:
5. I spent approximately half and [sic] hour with Mr. Upchurch discussing confidential details relating to filing dissolution of marriage proceeding, including details of domestic violence which had occurred during my marriage to my husband. I did so with the belief that I would be hiring Mr. Upchurch to handle my dissolution of marriage.
6. Mr. Upchurch assured me that the information discussed during our meeting would be confidential and that he could now not represent my husband in a dissolution of marriage action because it would be a conflict of interest.
The wife's affidavit further stated that Upchurch did not charge her for the consultation, but told her he would represent her if she paid a $2500 retainer. The wife's affidavit concluded by stating that she did not waive her attorney/client relationship with Upchurch, and she did not consent to Esposito's representation of her husband.
At the hearing on the petition, Esposito testified that he did not believe there was a conflict and that the court had the discretion to decide if one did exist. Esposito also testified that he was unaware of his partner's consultation with the wife until he received her motion; that Upchurch was never retained to represent the wife; and that Upchurch was prepared to testify *749 that he does not remember anything she told him that may be confidential. The trial court questioned whether an attorney/client relationship could be established based upon one visit, stating, "Consultation itself is not determinative of that issue. This happens frequently. The question is: did they dodid they move forward? Did they do anything affirmatively to progress her case or, you know, after that happened, and apparently she wasn't retained. It was one visit, I guess, from your statement." The court concluded it would utilize "a little discretion" and deny the motion. Thus, the wife filed her petition for certiorari with this court. A response was ordered from the husband, but he failed to comply with that order.
At the outset, we recognize that this court may not grant the extraordinary writ of certiorari and disturb the trial court's order unless the order constitutes a departure from the essential requirements of law. Key Largo Rest., Inc. v. T.H. Old Town Assocs., Ltd., 759 So.2d 690 (Fla. 5th DCA 2000). Thus we proceed to resolve this matter pursuant to that standard of review.
Rule 4-1.9, Rules Regulating the Florida Bar, provides that a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client. The rule provides for an exception if the former client consents after consultation. Rule 4-1.10, Rules Regulating the Florida Bar, addresses conflict of interest problems involving other lawyers in the same firm with the attorney who had the conflict. It states in part:
While lawyers are associated in a firm, none of them shall knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7, 4-1.8(c), 4-1.9, or 4-2.2.
* * * *
A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in rule 4-1.7.
R. Regulating Fla. Bar 4-1.10(a) and (d).
The rule of imputed disqualification is intended to "give effect to the principle of loyalty to the client as it applies to lawyers who practice in the same firm." R. Regulating Fla. Bar 4-1.10 cmt. The rule is premised on the generally accepted notion that a law firm is essentially one lawyer and is thus vicariously bound by the obligation of loyalty owed by each lawyer associated in the firm. Id.
In State Farm Mutual Automobile Insurance Co. v. K.A.W., 575 So.2d 630, 633 (Fla.1991), the supreme court held that under the Rules of Professional Conduct, the party seeking disqualification must establish the following:
(1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client.
(Citations omitted).
In order to establish the first prong of this standard, the law does not require a long or complicated attorney/client relationship to fulfill the requirements for disqualification, and it is not necessary to prove that confidential communications were disclosed because once the relationship is established, an irrefutable presumption arises that confidences were revealed to the attorney. Id.; Key Largo, 759 So.2d at 693 (citing McPartland v. ISI Inv. Servs., Inc., 890 F.Supp. 1029, 1031 (M.D.Fla.1995)). Moreover, the *750 existence of the attorney/client privilege does not depend upon whether the client actually hires the attorney. Dean v. Dean, 607 So.2d 494 (Fla. 4th DCA 1992), rev. dismissed, 618 So.2d 208 (Fla.1993). It is enough if the client consults the attorney with intentions of employing him or her professionally. Id. In considering whether the attorney/client privilege applies to disqualify an attorney from opposing a former client, the focus "is on the perspective of the person seeking out the lawyer, not on what the lawyer does after the consultation." Id. at 499; see also Gerheiser v. Stephens, 712 So.2d 1252 (Fla. 4th DCA 1998) (holding that co-defendant's mother's conversation with attorney who later represented defendant was protected by attorney/client privilege, even though mother did not retain attorney, because mother was acting as agent for her son for purpose of securing legal representation for him); Lane v. Sarfati, 676 So.2d 475, 476 (Fla. 3d DCA 1996); The Florida Bar v. King, 664 So.2d 925, 927 (Fla.1995) (holding that a fee is not necessary to form an attorney/client relationship) (citing Dean).
Once it is established that an attorney/client relationship exists, the party seeking disqualification must show that the matter in which the law firm subsequently represented the interest adverse to the former client is the same matter or substantially related to the matter in which it represented the former client. K.A.W., 575 So.2d at 633; see also Key Largo, 759 So.2d at 693; Lee v. Florida Dep't of Ins. & Treasurer, 586 So.2d 1185 (Fla. 1st DCA 1991); Junger Util. & Paving Co. v. Myers, 578 So.2d 1117 (Fla. 1st DCA 1989). In the instant case, the two proceedings-the injunction case and the dissolution case-are substantially related. The injunction is for domestic violence and the wife asserts that the domestic violence is the reason she is seeking a divorce. See, e.g., Balda v. Sorchych, 616 So.2d 1114 (Fla. 5th DCA 1993) (recognizing that conflict concerns arise when an attorney must prepare a case against and cross-examine or impeach a former client on a subject matter so closely connected to the earlier representation that confidentiality might be involved).
In the present case, the wife's unrebutted affidavit states that she divulged confidential details relating to her marriage, including details of domestic violence; that she did so with the belief that she would hire Upchurch to handle her divorce case; and that she declined to waive her attorney/client relationship with him. These allegations are sufficient under the law to require disqualification in the instant case. We conclude, therefore, that the trial court's denial of the motion to disqualify constituted a departure from the essential requirements of law and requires that we grant the writ.
CERTIORARI GRANTED; ORDER QUASHED.
THOMPSON, C.J., and ORFINGER, R.B., J., concur.