MONACO, J.
The petitioner, Karen Eccles, seeks cer-tiorari review of an order disqualifying her attorney, George W. Salter, from representing her at the trial of a will contest below. Because we find no departure from the essential requirements of law in the trial court’s order disqualifying Mr. Salter, we deny the petition.
We note at the outset that an order ruling on a motion to disqualify a party’s chosen counsel is renewable by certiorari. See Schultz v. Schultz, 783 So.2d 329 (Fla. 4th DCA 2001); Eggers v. Eggers, 776 So.2d 1096 (Fla. 5th DCA 2001). Certiora-ri relief, however, should not be granted in such circumstances unless the order constitutes a departure from the essential requirements of law. See Metcalf v. Metcalf, 785 So.2d 747 (Fla. 5th DCA 2001); Key Largo Rest., Inc. v. T.H. Old Town Assocs., Ltd., 759 So.2d 690 (Fla. 5th DCA 2000); see also Frank, Weinberg & Black, P.A. v. Effman, 916 So.2d 971 (Fla. 4th DCA 2005).
This case was commenced when the respondent, Beverly Nelson, filed a petition for administration of the estate of her mother, Elfreda I. Eccles, who passed away in 2004. Ms. Nelson sought administration of a will dated January 24, 2001, which bequeathed various amounts of money among the decedent’s eight children, and which named Ms. Nelson as personal representative. The petitioner, through attorney Salter, filed an objection to the administration of the 2001 will, asserting that it had been superseded by a will executed in 2004. The 2004 will bequeathed the assets of the estate in a manner different than the 2001 will, and named a different personal representative. The petitioner was one of the witnesses to the will, and attorney Salter prepared and notarized the 2004 will.
*660 After the petitioner’s objection was filed and discovery was taken, Ms. Nelson filed a motion to disqualify Mr. Salter from representing the petitioner based on the requirements of the Florida Bar Code of Professional Responsibility. It appears that Mr. Salter and the petitioner have had a fourteen year relationship, and the petitioner works in Mr. Salter’s office. In the year 2000, Mr. Salter had a short conversation with the decedent and prepared a will for her. The decedent did not execute this will, however, and instead executed the 2001 will a year later. The 2001 will was prepared by a different attorney. The next time Mr. Salter spoke to the decedent was in 2004, when he came from his office in St. Petersburg to her home in Winter Park, and presented a new will to her for execution.
Mr. Salter testified that he learned from the petitioner that the decedent had fallen, and had a bone disease that was causing her to deteriorate physically. Mr. Salter described her condition as “physically debilitated,” and “deteriorating.” It appears that the petitioner, not the decedent, asked Mr. Salter to prepare the 2004 will. The signature on the 2004 will, which appears to be markedly different than the signature on the 2001 will, has been questioned. As a result of these and other disclosures, questions respecting undue influence, the decedent’s mental capacity, and the genuineness of the signature on the 2004 will have all been raised in the trial court.
The respondent moved to disqualify Mr. Salter because based on his drafting of the 2004 will and on his supervision of the execution of the will he would be a witness to all of the issues in dispute. In addition, Ms. Nelson suggested that the long term relationship between Mr. Salter and the petitioner created a conflict of interest. At the hearing held by the trial court to resolve the disqualification issue the petitioner argued that there were persons other than Mr. Salter available to testify concerning the objections, and that Mr. Salter’s testimony would be “merely supportive and corroborative.”
The trial court determined that Mr. Salter’s knowledge and involvement with the 2004 will would concern crucial issues to be determined at trial, and entered an order disqualifying him from representation of the petitioner at trial. The court did not disqualify him from representing the petitioner either pre-trial or post-trial, however. We find no departure from the essential requirements of law, and deny the petition for certiorari because Florida Bar Code of Professional Responsibility Rule 4-3.7 supports the disqualification.
Rule 4-3.7 reads in pertinent part, as follows:
(a) When Lawyer May Testify. A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of the client except where:
(1) the testimony relates to an uncontested issue;
(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
(3) the testimony relates to the nature and value of legal services rendered in the case; or
(4) disqualification of the lawyer would work substantial hardship on the client.
In the present case the issues of mental incapacity, undue influence and genuineness of the signature are obviously contested matters of substance, and Mr. Salter’s testimony is well beyond a mere formality. The trial court’s application of the rule to these facts appears to be with *661 in its authority, and is supported by Larkin v. Pirthauer, 700 So.2d 182 (Fla. 4th DCA 1997). There, as here, the disqualification of the attorney for a personal representative by the trial court was approved where the attorney prepared the will and supervised its execution, and where the issues before the trial court concerned the testamentary capacity of the decedent and undue influence.
The petitioner next argues that Rule 4-3.7 is unconstitutional because it violates the First Amendment right to association. We do not agree.
The freedom of association is not specifically mentioned in the First Amendment to the United States Constitution. Rather, it appears to have grown out of the guarantee of the right to peaceably assemble and out of the freedom of speech, and it is protected so that other activities imbedded in the First Amendment might be fully safeguarded and allowed to flourish. Freedom of association first found general recognition by the United States Supreme Court in 1937 in De Jonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937), but came to full fruition during the 1950’s and 1960’s as a means of guaranteeing the rights of individuals who were protesting during the civil rights era. See, e.g., National Ass’n for Advancement of Colored People v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). By 1960, the freedom of association was fully recognized by the United States Supreme Court. In Bates v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960), Justice Stewart was able to report that “it is now beyond dispute that freedom of association for the purpose of advancing ideas and airing grievances is protected by the Due Process Clause of the Fourteenth Amendment from invasion by the States.”
One of the permutations of the freedom of association concerns the right to make personal associations between spouses, family members and other close confidants. In Roberts v. United States Jaycees, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), the Supreme Court recognized that people must be allowed to maintain intimate relationships that should be safe from undue intrusion by the state. While these associational interests are generally familial and narrow in their scope, the state may interfere with them only if to do so would serve a compelling interest. See, e.g., Johnson v. City of Cincinnati, 310 F.3d 484 (6th Cir.2002), cert. denied, 539 U.S. 915, 123 S.Ct. 2276, 156 L.Ed.2d 130 (2003); Freeman v. City of Santa Ana, 68 F.3d 1180 (9th Cir.1995). The petitioner appears to assert that it is this associational interest that renders Rule 4-3.7 constitutionally infirm.
The freedom of association, however, is not absolute in its reach. Where there is a substantial and legitimate governmental interest requiring interference, the state may appropriately impinge on the freedom of association in a limited fashion. See Konigsberg v. State Bar of California, 366 U.S. 36, 49-52, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961). Cf., Rotary Int’l v. Rotary Club of Duarte, 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987). Thus, for example, where constitutionally prohibited discrimination was masked by an asserted freedom of association, the Supreme Court tilted in favor of those who were the victims of discrimination. See Roberts.
The petitioner argues that she has an associational right to choose her own counsel, and that the state courts may not interfere with that selection. State courts, however, have a valid governmental interest in protecting the integrity of litigation taking place within it, and may certainly in *662 the exercise of that interest enact rules governing when and how lawyers may act vis-a-vis that litigation. There is no constitutional impediment, for example, in preventing non-lawyers from representing persons in the courts of Florida. See Bauer v. State, 610 So.2d 1326 (Fla. 2d DCA 1992); see also Wheat v. United States, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); Guajardo v. Luna, 432 F.2d 1324 (5th Cir.1970). Likewise, lawyers who are not members of the Florida Bar may only practice in the courts of this state upon compliance with Rule 2.061, Florida Rules of Judicial Administration. Moreover, with the possible exception of the concurring opinion in Kusch v. Ballard, 645 So.2d 1035 (Fla. 4th DCA 1994), a substantially different case factually than the one at hand, we find virtually no support for the petitioner’s position. We, therefore, conclude that the constitutional freedom of association is not offended by Rule 4-3.7.
We recognize, of course, that disqualification of a party’s lawyer “should only be resorted to sparingly.” See Singer Island Ltd., Inc. v. Budget Constr. Co., Inc., 714 So.2d 651, 652 (Fla. 4th DCA 1998). Here, however, disqualification was appropriate. As there has been no departure from the essential requirements of law, we decline to issue a writ of certiorari.
PETITION DENIED.
PLEUS, C.J., and SAWAYA, J., concur.